**Violet J. LAUTARES, Plaintiff,**

v.

**J. A. SMITH, Sam V. Tugwell, and Earl Barrow, Members of Review Committee, United States Department of Agriculture, Defendants.**

**Civ. No. 635.**

United States District Court
E. D. North Carolina,
Washington Division.

May 9, 1968.

M. E. Cavendish, Greenville, N. C., for plaintiff.

Robert H. Cowen, U. S. Atty., by Gerald L. Bass, Asst. U. S. Atty., for defendants.

## OPINION and ORDER

LARKINS, District Judge:

### SUMMARY

This action was instituted by the plaintiff under Section 365 of the Agricultural Adjustment Act of 1938, as amended (7 U.S.C.A. Section 1365), to obtain a review of the determination by the defendant-Review Committee of the plaintiff's request for a reconstitution of certain crop allotments on certain land she owned. The defendant-Review Commit-

tee, pursuant to the requirement of the Act, has filed a transcript of the record upon which the determinations complained of were made, together with its findings of fact.

## FINDINGS OF FACT

Until his death on June 28, 1966, Thomas Jordan, the father of the plaintiff, was the owner and operator of a farm in Johnston County, North Carolina (hereinafter referred to as Johnston County) containing approximately seven hundred and seventy four (774) acres of farmland. Adjoining this land was a tract containing approximately one hundred and nine (109) acres of farmland which was owned by the plaintiff.

These two tracts were constituted as farm P131 by the Johnston County office of the Agricultural Stabilization and Conservation Service of the United States Department of Agriculture (hereinafter referred to as the A.S.C.S.).

The plaintiff acquired her tract by purchase at a trustee's foreclosure sale held November 26, 1938. Subsequently, she received from the trustee a deed of conveyance dated December 22, 1938 which was recorded in the office of the Register of Deeds of Johnston County on July 7, 1944.

The two tracts, designated as farm P131, were operated by Thomas Jordan from 1938 until his death on June 28, 1966. Thomas Jordan received the proceeds from the crops produced on farm P131 and supervised the farming activities on farm P131. He had done this since 1938. (Tr. 17, 24).

There has been no finding heretofore as to the time when these two tracts were combined as farm P131. The defendants' counsel concedes this in his brief. Although it would appear that such a combination occurred at least a decade or more ago, there are no facts in the record as presently constituted to support such a finding.

On February 8, 1966, Thomas Jordan and wife executed an option to convey a certain portion of a seventy seven and eleven-one hundredths (77.11) acre tract which tract was a part of the larger tract of land comprising farm P131 which was owned by Thomas Jordan. Thomas Jordan died on June 28, 1966. His will, which appears to have been probated in accordance with the law of this state, devised that tract of land (i. e., the 77.11 acre tract) to his son, Thomas W. Jordan. Subsequently, the co-executors of the estate of Thomas Jordan and Thomas W. Jordan and wife executed a warranty deed dated December 20, 1966 conveying fifty five and one hundred fifty six-one thousandths (55.156) acres of the seventy seven and eleven-one hundredths (77.11) acre tract to Julian A. Ott, et al, in accordance with the option previously executed. This deed was filed for recordation in the office of Register of Deeds of Johnston County on December 28, 1966. It contained the following provision:

"It is specifically understood and agreed between the parties hereto that no crop allotments are conveyed by this instrument, and by acceptance of this deed the parties of the second part agree to execute any and all instruments or documents that may be required by the U. S. Department of Agriculture to effectuate this agreement."

The tract devised to Thomas W. Jordan contained thirty eight and five-tenths (38.5) acres of cropland; thirty four (34) of which were located in that portion of the tract conveyed by the deed to Julian A. Ott, et al.

On October 17, 1966, Jennings Jordan, a co-executor of the estate of Thomas Jordan, filed with the Johnston County A.S.C.S. office "form NC Perf 1, Request for Cropland Redetermination" for the purpose of dividing that part of farm P131 of which Thomas Jordan was seized in fee at the time of his death between the heirs of Thomas Jordan.

On January 12, 1967, the plaintiff requested the Johnston County A.S.C.S. office to divide her one hundred and nine (109) acre tract from the parent farm, P131, and to make a reconstitution of all applicable allotments.

On February 16, 1967, Jennings Jordan, a co-executor of the estate of Thomas Jordan filed with the Johnston County A.S.C.S. office on "form ASCS–155" a formal request for this division.

Pursuant to the application of Jennings Jordan filed October 17, 1966, Ray Cobb, the Johnston County A.S.C.S. Compliance Supervisor, redetermined that the cropland for farm P131 totaled four hundred eighty and six-tenths (480.6) acres. The plaintiff objected to this redetermination of the total acres of cropland. As a result she employed a private surveyor whose work indicated that farm P131 was comprised of four hundred eighty four and four-tenths (484.4) acres of crop-

land. · The Johnston County A.S.C.S. Committee (hereinafter referred to as the County Committee) adopted the results of the survey made by the plaintiff's private surveyor which showed that her tract contained sixty seven and nine-tenths (67.9) acres of cropland; and that farm P131 contained four hundred eighty four and four-tenths (484.4) acres of cropland.

The County Committee approved the division [1] of farm P131 on "form ASCS–155" on March 9, 1967 on the cropland basis as provided by Section 719.8(b) of the reconstitution regulations. Farm P131 was divided as follows:

| Farm | Acres Farmland | Acres Cropland | Percent of Cropland |
|------|----------------|----------------|---------------------|
| Q344 | 109.0 | 67.9 | .1402 |
| P131 | 774.7 | 416.5 | .8598 |

The 1967 allotments and bases were divided among the two tracts as follows:

| Farm | Cotton | Tobacco | Wheat | Feed Grain Base | Conserving Base |
|------|--------|---------|-------|-----------------|-----------------|
| Q344 | 7.5 | 4.59 | 3.6 | 14.0 | 1.0 |
| P131 | 46.0 | 28.17 | 21.8 | 86.0 | 5.0 |

———◆———

The County Committee further provided:

"The 1967 tobacco yield per acre for parent farm P131 was 1593 lbs. This same yield was established for divided farms Q344 and P131 in accordance with Section 725.63 of the Flue Cured Tobacco Allotment and Marketing Quota Regulations 1966–67 and Subsequent Marketing Years. The 1967 tobacco marketing quota of 7312 lbs. for FSN Q344 was established in accordance with Section 725.60 of the tobacco regulations. The basic quota of 7312 lbs. was adjusted down to 7233 lbs. because of over-marketings in 1966, in accordance with Section 725.65 of the tobacco regulations."

By letter dated March 23, 1967, the Johnston County A.S.C.S. office notified the plaintiff that farm P131 contained four hundred eighty four and four-tenths (484.4) acres of cropland. That letter noted that the division of cropland was to be as follows:

| | |
|---|---|
| Violet J. Lautares | 67.9 acres |
| Evelyn J. Martin | 58.5 acres |
| Wade G. Jordan | 25.4 acres |
| Jennings Jordan | 223.4 acres |
| Thomas Jordan [2] | 38.5 acres |
| Thomas Jordan Estate | 70.7 acres |
| | 484.4 acres |

1. When parent farm P131 was divided, the tract owned by the plaintiff was numbered as farm Q344. The remaining part of P131 retained that farm number.

2. It would appear that this should be "Thomas *W.* Jordan," who was a devisee of the will of Thomas Jordan.

The records of the Johnston County A.S. C.S. office differ from these figures in several minor respects largely due to the policy of the A.S.C.S. relative to the "rounding off" of decimals (Tr. 31). There is, however, one very major difference in the cropland alloted to Thomas Jordan (i. e., Thomas W. Jordan). The letter of March 23, 1967, showed that thirty eight and five-tenths (38.5) acres of cropland were alloted to him. This figure is the total number of cropland acres on the seventy seven and eleven-one hundredths (77.11) acre tract devised to Thomas W. Jordan and makes no allowance for the thirty four (34) cropland acres which were a part of the land conveyed to Julian A. Ott, et al. on December 20, 1966. The plaintiff's investigation of the records of the Johnston County A.S.C.S. office revealed that Thomas W. Jordan has only four and five-tenths (4.5) acres of cropland (Tr. 32). The record does not state on which basis the reconstitution of allotments was made.

On March 24, 1967, the plaintiff filed with the Johnston County A.S.C.S. office an application for review of the findings of the County Committee. In that application, she objected to the following determinations made by the County Committee:

1. The total number of cropland acres in farms Q344 and P131.

2. The 1967 tobacco allotment, corn allotment, and wheat acreage for farm Q344.

3. The total number of acres of cropland in the former parent farm P131 due to the sale of land for nonagricultural purposes.

This appeal was heard by the Johnston County A.S.C.S. Review Committee of the United States Department of Agriculture (hereinafter referred to as the Review Committee) on Saturday, June 2, 1967, at 10:00 A.M. in Smithfield, Johnston County, North Carolina. The plaintiff was present and was represented by counsel. A transcript of that hearing has been furnished to the Court. The Review Committee, after making rather sketchy findings of fact, denied the appeal of the plaintiff and concluded:

"We conclued (sic) that farm serial number P131 was properly constituted prior to 1967. The cropland on all tracts was correctly determined after Violet Lautares' request was filed for a division of P131. Farm serial number P131 was correctly divided by the county committee on March 9, 1967, in accordance with Sections 719.3(b), 719.7(a), 719.8(b) of the reconstitution regulations. The basis for this conclusion results from the records which show that Violet Lautares requested that her seperately (sic) owned tract be divided from P131, and was approved by the county committee before any other request or division was filed."

From this determination, the plaintiff appealed to this Court pursuant to 7 U.S.C.A. Section 1365. The plaintiff's complaint alleges that the Review Committee erred in three (3) ways, to wit:

I. That the land owned by the plaintiff and the land owned by her father was improperly combined as farm P131.

II. That farm P131 should have been reconstituted on the contribution method or other legal method rather than the cropland method.

III. That the plaintiff was entitled to a pro rata share of the crop allotments on the thirty four (34) acres of cropland conveyed to Julian A. Ott, et al., in December 1966; and that share was denied to her.

CONCLUSIONS OF LAW

The function of this Court in cases of this nature has been strictly limited by the Congress. Title 7 U.S.C.A. Section 1366 provides in part:

"The review by the court shall be limited to questions of law, and the findings of fact by the review committee, if supported by evidence, shall be conclusive."

As noted above, the plaintiff has sought a review of three issues which both the Review Committee and County Committee decided adversely to her.

## I and II:
### Combination and Reconstitution

■ The two committees below concluded that the land owned by the plaintiff and the land owned by the late Thomas Jordan wsa properly combined into farm P131. As the defendants' counsel correctly states in his brief:

"The record made at the hearing contains no evidence as to when the plaintiff's 109 acre tract was combined with farm P131."

Such a finding would be essential to a determination as to whether the lands were properly combined as farm P131. This is because the regulations which would be determinative of such a question have changed three times in the past decade. One set of regulations was in effect prior to March 20, 1962; another set of regulations was in effect from March 20, 1962 to September 25, 1964; and a third set of regulations has been in effect since September 26, 1964. Thus a determination as to when the land was combined as farm P131 is essential to determining whether such a combination was proper or improper.

Whether the proper method of reconstituting the allotments was used must await a determination as to the propriety of the combination of the land as farm P131. If farm P131 was improperly combined then the provisions of Regulation Section 719.7 would appear to be applicable. If farm P131 was properly combined, then the provisions of Regulation Section 719.8 would appear to be applicable.

■ The County Committee, concluding that the combination was proper, proceeded to reconstitute the allotments on farm P131 based upon the cropland method as provided by Regulation Section 719.8(b). Absent, as here, any facts to support the determination as to the propriety of the combination involved as well

as the time such combination was made, such a method of reconstitution was improper. Additionally, the failure of both the County Committee and the Review Committee to find as a fact that the use of the contribution method of reconstitution would not result in an equitable distribution of the allotments under the circumstances, that the combination did not become effective within the six (6) years preceding the request for a reconstitution, or that no records were available beyond such six (6) year period as provided by Regulation Section 719.8(a) (1) is reason enough in itself to remand this action to the Review Committee for further findings of fact.

The regulations establish several methods of reconstitution and the precedence they are to hold in their application to particular requests for reconstitution. It is quite clear that for the cropland method to be used that the contribution method, in the words of the regulation, "does not apply." Regulation Section 719.8(b). The answer of the County Committee to the plaintiff's appeal to the Review Committee, the transcript of the hearing before the Review Committee, and the decision of the Review Committee make such findings only by insinuation and elimination. The regulations dictate that such findings be made clearly and with supporting facts. There are no facts in the record before this Court to support such a finding or to give rise to such a conclusion.

## III:
### Allotments on the thirty four (34) acres

The decision of the Review Committee and the brief filed with it by the County Committee indicate that the plaintiff did not receive a pro rata share of the allotments on the thirty-four (34) acres of cropland which were conveyed to Julian A. Ott, et al., in December 1966. These reports indicate that in reconstituting the allotments, the successors in interest to Thomas Jordan, deceased, were given allotments based on cropland, which they did not, in fact, have title to at the time of the reconstitution although they had

expressly reserved the allotments to that land. The Review Committee concluded that its decision was correct because:

"the records * * * show that Violet Lautares requested that her seperately (sic) owned tract be divided from P131, and was approved by the County Committee before any other request for division was filed."

This is in conflict with the report that the County Committee filed with the Review Committee. Their report notes that Jennings Jordan, a co-executor of the estate of Thomas Jordan, filed a request for cropland redetermination on October 17, 1966, and that this function was not completed by the county office until after the plaintiff had, by letter, requested a reconstitution of allotments.

Regulation Section 719.6(b) may well be applicable to a determination of this issue. If that is the case then it is clear, first, that this regulation has not been complied with and second, that the reconstitution must be made on the basis of conditions existing "at the time of transfer of ownership" (i. e., December 20, 1966) and not the time when the conveyance came to the attention of the local A.S.C.S. office. It would also appear that the determination made by the County Committee and upheld by the Review Committee is in direct conflict with the provision in the deed of December 20, 1966 expressly reserving to the grantors the crop allotments on the land which was the subject of the conveyance.

For these apparent inconsistencies in the record as well as the effect that a redetermination as to the first two issues involved here may have on a proper determination of this issue, the Court is of the opinion that this issue should be remanded to the Review Committee for further findings and more deliberate conclusions.

## CONCLUSION

It has been held that one who appeals the decision of a County Committee bears the burden of proof before the Review Committee on issues of fact involved in this appeal. Lee v. De Berry, 219 S.C. 382, 65 S.E.2d 775 (1951). Assuming that statement to be applicable to this case, the Court is of the opinion that a burden rests upon the County Committee prior to the time the appellant therefrom bears the burden before the Review Committee. The County Committee has the burden, or perhaps the obligation, to place before the Review Committee those facts upon which its ruling was founded. This obligation to present, if you please, a *prima facie* showing that its ruling was based upon some set of facts must be met prior to the time the burden of proof before the Review Committee is assumed by the appellant. The County Committee can discharge this function in several ways. A written report could be submitted to the Review Committee, or evidence could be presented at the hearing. The point is that in this case nothing was done.

The essential element of this obligation is that the County Committee inform the appellant and the Review Committee of those facts upon which its ruling is based. Until such time as the County Committee fulfills this function, the burden of proof does not rest upon the appellant. To remove such an obligation from the County Committee would be to give it license to do as it pleased; and, would leave the appellant in the dark as to the particular facts upon which the decision reached by the County Committee was based. This obligation is but an assurance that fair play will be the rule, not the exception, in administrative proceedings.

In the instant case, this obligation was never fulfilled by the County Committee. At no time in the course of the hearing before the Review Committee did the County Committee seek to establish any of the factual bases upon which its own ruling was founded. Only in the answer to the plaintiff's application for review did the County Committee seek to make known these bases; and, then only in broad terms. Somewhere in the adminis-

trative procedure there must be set out clearly and distinctly the factual bases for the rulings reached by administrative groups. Until that point in time, it would be unjust to place any burden upon the appellant from an administrative ruling. The burden in this case rested first on the County Committee. It failed to carry out this function; and until it has performed this function, no burden of proof could equitably rest upon the appellant-Lautares. The burden rested more recently with the Review Committee. Likewise, it has also failed to find those facts upon which its conclusions may be founded. For this reason, this Court has no choice but to remand this case to the Review Committee for further proceedings and findings of fact upon which it may base a just and true determination of the issues raised by the plaintiff.

Upon remand, the Review Committee is specifically directed:

1. To find such facts as are substantially supported by the evidence that will enable a just and true determination of when the combination of lands hereinabove referred to as farm P131 took place and whether such combination was proper or improper.

2. To find such facts as are substantially supported by the evidence that will enable a just and true determination as to which of the several methods of reconstitution shall be used to reconstitute the allotments on former parent farm P131; and to reconstitute such allotments in accordance therewith.

3. To find such facts as are substantially supported by the evidence that will enable a just and true determination of whether the plaintiff is entitled to a pro-rata share of the allotments on the particular thirty four (34) acres of cropland hereinabove referred to; and to reconstitute such allotments in accordance therewith.

In remanding this proceeding, the Court is aware that these particular administrative bodies cannot be held to the strict rules of fact finding to which this Court adheres in proceedings *de novo*. Nevertheless, the record in this case is totally devoid of any semblance of fact finding. Indeed were this procedure to be sanctioned then one who in the future contests the rulings made by these administrative groups might well be reminded of a totalitarian establishment where conclusions are reached and decisions are made without the slightest scintilla of evidentiary support.

It may well be that the conclusions reached by these two committees are proper but the present record contains only broad and conclusionary support for such a result.

In conducting further proceedings in accord with this ruling, the Review Committee should not hesitate to seek the aid of the United States Attorney for this District. The present record would indicate that some guidance should be given to the Review Committee both in conducting a further hearing and in preparing their final decision.

The Court having examined the record presented, the exhibits filed, and the briefs submitted is, of the opinion, and finds as a fact that the purported findings of fact made by the Review Committee are not sufficient in law to support the conclusions reached; and, further that this action should be remanded to the Review Committee for such further proceedings as have been hereinabove set forth.

Order entered forthwith in accordance with above opinion.